Kevin KING, Petitioner–Appellant,

v.

David TRIPPETT, Respondent–Appellee.

No. 98–1909.

United States Court of Appeals,
Sixth Circuit.

Argued: Aug. 13, 1999

Decided and Filed: Sept. 14, 1999

Jeanice Dagher–Margosian (argued and briefed), Ann Arbor, Michigan, for Appellant.

Janet A. Van Cleve (argued and briefed), OFFICE. OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for Appellee.

Before: MERRITT, KENNEDY, and DAUGHTREY, Circuit Judges.

## OPINION

KENNEDY, Circuit Judge.

Petitioner Kevin King, a/k/a Kevin Pease ("Petitioner"), appeals the district court's judgment denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner claims that the district court erred in holding that the state court's (1) refusal to bar testimony of a witness who failed a polygraph exam; and (2) exclusion of polygraph evidence for impeachment purposes did not violate his rights under the United States Constitution to due process and to confront the witnesses against him. For the reasons set forth in this opinion, we shall affirm the decision of the district court.

## I. FACTUAL BACKGROUND

Petitioner's conviction arose out of the January 11, 1982 armed robbery and murder of Robert Burt and Robert Delgado, who lived together in a Rochester, Michigan condominium where the crimes occurred. Burt and Delgado were known to petitioner and several of the witnesses as "Bob" and "Boob" or "Boo." Robert Burt was severely beaten and died of multiple stab wounds. Robert Delgado died of multiple stab wounds and a slit throat. A stereo with large speakers and a 1981 Trans Am automobile were taken in the robbery. Petitioner Kevin King, Martin Schaefer, and Michael Walford were charged with the armed robbery murders.

At petitioner's trial, several witnesses provided testimony to the effect that, after the murders, petitioner admitted to them that he had "wasted" at least one of the victims, that he had a sawed-off shotgun in his possession, and had blood on his jeans. In addition, the trial court admitted two tape-recorded statements made by petitioner to police after being advised of his constitutional rights, which he waived in writing. In both statements, petitioner conceded that he accompanied Walford and Schaefer to the victims' condominium and took their stereo and car. In his second statement, petitioner admitted that he stabbed one of the victims.

Martin Schaefer testified against petitioner. Schaefer admitted both on direct and cross–examination that he was testifying pursuant to a plea bargain. He was allowed to plead guilty to two counts of armed robbery in exchange for dismissal of murder charges against him. Schaefer testified that petitioner had suggested "rolling Boob and Bob" (i.e., robbing them) because they had a nice car and stereo, that petitioner obtained a shotgun that he and Schaefer shortened so it could be concealed, and that petitioner arranged the visit to the victims' condominium. Schaefer also testified that at the last minute, he changed his mind and announced that he did not want to participate in the robbery, so instead dropped petitioner and Walford off at the condominium and left. Schaefer said he returned about fifteen or twenty

minutes later and saw petitioner and Walford in a red Trans Am with stereo parts in the back seat. Schaefer also testified that he saw "something red" on petitioner's hood after the robbery. The following day, he heard petitioner ask people to burn his pants because they were "evidence." Schaefer conceded that, while he was very good friends with Walford, whom he had known for six or seven years, he was not close to petitioner, whom he had known only a month or two.

Petitioner testified on his own behalf at trial. His testimony differed from that of the other witnesses in one important respect. Although he conceded that he had struggled with both Bob (who had a knife) and Boo in the condominium, petitioner denied that he had planned to rob them, denied that he killed anyone, and claims that when he left the condo to load their stereo into the Trans Am, Bob and Boo were still alive. The defense also tried to call Michael Walford as a witness. Out of the presence of the jury, Walford exercised his Fifth Amendment· privilege against self-incrimination. The defense then recalled Martin Schaefer, who testified that Walford admitted slitting one of the victim's throats and kicking one of them.

The jury found petitioner guilty of first-degree felony murder on February 11, 1983. He was sentenced to mandatory terms of life imprisonment on February 25, 1983.

## II. PROCEDURAL BACKGROUND

After his conviction, petitioner appealed as of right to the Michigan Court of Appeals, claiming error in: (1) the trial court's refusal to suppress petitioner's taped statements to the police; (2) the trial court's refusal to permit questioning of Martin Schaefer regarding his plea agreement requirement of taking a polygraph examination; (3) the trial court's refusal to permit petitioner to call Michael Walford as a witness; and (4) an unduly confusing jury instruction regarding the doctrine of felony murder.

The Michigan Court of Appeals affirmed petitioner's conviction in a per curiam opinion. On April 23, 1985, the Michigan Supreme Court denied petitioner's letter request for review.

Petitioner returned to the trial court in February 1994 and filed a motion for relief from judgment pursuant to M.C.R. 6.500, et. seq., claiming that: (1) he was denied due process of law when the prosecution put Martin Schaefer on the stand, knowing that Schaefer had failed the polygraph which he had been required to pass as part of his plea bargain; (2) he was denied his right of confrontation under the Sixth Amendment when the trial court limited cross-examination of Schaefer in not permitting testimony about his polygraph exams; and (3) he was denied his right to a fair trial under the U.S. and Michigan Constitutions when the trial court delivered an unwarranted instruction as to accomplice liability.

The trial court denied relief on the merits of petitioner's claims on September 19, 1994. On December 20, 1994, the Michigan Court of Appeals also denied relief on the merits. On appeal, the Michigan Supreme Court denied relief based on M.C.R. 6.508(D). *People v. Kevin King*, 450 Mich. 856, 538 N.W.2d 683 (Mich.1995).

On August 14, 1996, petitioner filed the instant application for writ of habeas corpus raising the following issues:

1. The trial court impermissibly erred by refusing to either strike the false testimony of Martin Schaefer, the main prosecution witness, or, in the alternative, to allow petitioner to impeach Schaefer with that witness's failure to pass a polygraph pursuant to a plea agreement, resulting in a violation [of] petitioner's due process and confrontation rights under the Fifth and Sixth Amendments of the Federal Con-

stitution. U.S. Const. amends. V, VI, XIV.

2.The new habeas corpus provisions contained in the 1996 Anti–Terrorism and Effective Death Penalty Act do not apply in this case; consequently, this case is properly before the Federal District Court for review.

In its July 27, 1998 order, the district court denied petitioner's due process and confrontation clause claims on their merits. The court certified both of petitioner's issues for appeal on August 19, 1998.

### III. DISCUSSION

 The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–134, 110 Stat. 1214 (1996) ("AEDPA"), applies to this case because King filed his petition for habeas relief on August 14, 1996, several weeks after the Act's effective date of April 26, 1996. *See Nevers v. Killinger*, 169 F.3d 352, 357 (6th Cir.), *cert. denied*, —— U.S. ——, 119 S.Ct. 2340, 144 L.Ed.2d 237 (1999); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). The court of appeals reviews *de novo* the legal conclusions involved in the district court's decision to grant or deny a writ under § 2254 of the AEDPA, but reviews for clear error the district court's findings of fact. *Nevers*, 169 F.3d at 357 (citing *DeLisle v. Rivers*, 161 F.3d 370, 380 (6th Cir.1998) (en banc)). As amended, § 2254(d) of AEDPA provides as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). If no Supreme Court rule can be said to require a particular result in a particular case, the "unreasonable application" prong of the inquiry applies. In the Sixth Circuit, a writ of habeas corpus "will issue if the unreasonableness of the state court's application of clearly established precedent is not debatable among reasonable jurists. The unreasonableness of the application will not be debatable if it is so offensive to the precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." *Tucker v. Prelesnik*, 181 F.3d 747, 753 (6th Cir.1999).

Petitioner claims that the district court erred when it held that the state court's (1) refusal to bar testimony of a witness who failed a polygraph exam; and (2) exclusion of polygraph evidence for impeachment purposes were not "unreasonable applications" of clearly established federal law.

### A. Due Process Claim

 Petitioner contends that because the prosecution required Schaefer to take a polygraph test as a condition of offering him a plea bargain, and two polygraph examiners concluded that Schaefer had not been fully truthful, it was a violation of due process for the court to permit the State to call Schaefer as a witness and offer his testimony. Specifically, petitioner argues that his right to due process was violated by the prosecutor's introduction of a witness who was "known to be unreliable." At trial, the defense counsel stopped just short of accusing the prosecutor of knowingly introducing false testimony. The trial court therefore permitted Schaefer's testimony:

THE COURT: The law has not seen fit to allow polygraphy to determine truth or falsity of testimony. It has seen fit to

allow jury's [sic] to make that decision. What you're suggesting here is that we just turn it about and don't let the jury decide and do make our decision based on what some polygraph examiner thinks. You're also giving me a conclusion on the part of the Prosecutor's office because some polygraph examiner is not satisfied with his results of the test given to a subject that the Prosecutor's office or someone of them, depending upon what they think the value of such examinations should be able or should be bound to determine that therefore, such witness is unbelievable.

I don't think any of us are prepared to hand to the Prosecutor's office or anyone of them the right to decide whether ... somebody's testimony should be admitted or not.

MR. WRIGHT: Well, that isn't quite fair, Your Honor, Maybe I was a little off base, there was an agreement made, or the Prosecutor made an agreement with Mr. Schaefer-

THE COURT: We'll give you a deal if you'll take the polygraph exam. They're giving him a deal, I don't know whether they have or not, but they are giving him a deal, we think, and he took his polygraph exam. But supposing, regardless, what difference does that make whether he testifies here whether he had a deal or not?

MR. WRIGHT: As I say, I'm only going on an argument that is probably novel, that the Prosecutor as he said in his opening statement, that he seeks the truth, and if Mr. Schaefer did not comply with the agreement as the Prosecutor has outlined it-

THE COURT: If you're suggesting Mr. Fenton is calling a witness whom [he] does not believe, then say so. Mr. Fenton, you may tell us whether or not you believe this witness is going to tell the truth.

MR. FENTON: I'd be more than happy to, Your Honor ...

MR. WRIGHT: Well, I'm not going to say that.

THE COURT: That would be his only ethical problem, in his professional position. Mr. Fenton calls a witness and he believes the witness is going to testify truthfully, and if he knew the witness was going to testify falsely he shouldn't call him.

(J.A. 173–75).

In reviewing petitioner's habeas petition, the district court concluded that the decision of the Michigan Court of Appeals to deny petitioner's claim for lack of merit was a reasonable application of federal law. At the time of the state court's decision, the case of *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), which petitioner cites in support of his argument, was most relevant to petitioner's claim. In *Napue*, the principal state witness at the defendant's murder trial testified falsely that he had received no promises in exchange for his testimony. In fact, the prosecutor had promised the witness a recommendation for a reduced sentence. The prosecutor failed to correct the witness' perjured testimony, although he clearly knew it to be false. The Supreme Court held that the false testimony used by the State in securing the conviction may have had an effect on the outcome of the trial, and accordingly, reversed the defendant's conviction. *Id.* at 272, 79 S.Ct. 1173. Likewise, in *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the government's only witness linking the defendant with the crime falsely testified on cross-examination that he had received no promise of immunity from prosecution. The prosecutor failed to correct his perjury and repeated the witness' falsehood in his summation. The Supreme Court reversed the defendant's conviction because there was reasonable likelihood that the prosecutor's knowing use of perjury on an issue so relevant to the witness' credibility affected the judgment of the jury. *Giglio*, 405 U.S. at 154–55, 92 S.Ct. 763.

Petitioner's reliance on *Napue* for the proposition that the State violated his due process rights when it introduced the testimony of a witness who had failed two polygraph tests is misplaced. *Napue* and *Giglio* are distinguishable from the petitioner's own case. Assuming for the moment that Schaefer's testimony was material, the fact that Schaefer "failed" two polygraph tests does not prove that Schaefer testified falsely at petitioner's trial. The trial court's refusal to allow Schaefer's polygraph results to usurp the role of the jury in assessing Schaefer's credibility was, and still is, entirely consistent with clearly established Supreme Court precedent. The Supreme Court recently reaffirmed that "there is simply no consensus that polygraph evidence is reliable. To this day, the scientific community remains extremely polarized about the reliability of polygraph techniques." *United States v. Scheffer*, 523 U.S. 303, 118 S.Ct. 1261, 1265, 140 L.Ed.2d 413 (1998) (per se rule against admission of polygraph evidence in court martial proceedings did not violate the accused's Fifth or Sixth Amendment rights to present a defense).[1] *See also United States v. Scarborough*, 43 F.3d 1021, 1026 (6th Cir.1994) (district court did not err in barring defendant's cross-examination of witness on his failure of polygraph test as results of polygraph are "inherently unreliable"). As the district court in this case noted:

> Schaefer may have "failed" his polygraph exams because he was lying, or because he was nervous and the polygraph examiners misinterpreted his nervousness as the product of untruthfulness. The polygraph, after all, does not measure truthfulness directly. Rather, it measures nervous responses to questions. Schaefer may have been less than truthful in the polygraph tests about petitioner's involvement in the crimes, or his own, or about Michael Walford's, or he may have been fully truthful and the examiners mistaken. Authorities petitioner cites in support of his claim contend that polygraphy is between 70% and 85% accurate in detecting deception. Presumably, this means that even polygraphy's exponents admit that a substantial percentage of truth tellers will be labeled liars, and a significant percentage of liars will not be correctly identified.

(J.A. 42) Moreover, the Supreme Court has held that a prosecutor has no constitutional duty even to *disclose* to a criminal defendant the fact that a witness has "failed" a polygraph test. *See Wood v. Bartholomew*, 516 U.S. 1, 5–6, 116 S.Ct. 7, 133 L.Ed.2d 1 (1995). As the prosecutor in this case was entitled to conceal entirely Schaefer's polygraph results from petitioner, we cannot conclude that the prosecutor was at the same time constitutionally required to refrain from using Schaefer's testimony.

▇▇▇ The Fourteenth Amendment due process right invoked by petitioner "prohibits a knowing and deliberate use by a state of perjured evidence in order to obtain a conviction." *Burks v. Egeler*, 512 F.2d 221, 224 (6th Cir.1975) (citing *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690

---

1. The Court observed that "[u]ntil quite recently, federal and state courts were uniform in categorically ruling polygraph evidence inadmissible under the test set forth in *Frye v. United States*, 293 F. 1013 (App.D.C.1923), which held that scientific evidence must gain the general acceptance of the relevant expert community to be admissible." *Scheffer*, 118 S.Ct. at 1266 n. 7. The Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), which held that *Frye v.* *United States* had been superseded by the Federal Rules of Evidence and that expert testimony could be admitted if the district court deemed it both relevant and reliable, apparently did not reflect a change in the Court's position on the reliability of polygraph evidence. The Court noted in *Scheffer* that "[n]othing in *Daubert* foreclosed, as a constitutional matter, per se exclusionary rules for certain types of expert or scientific evidence." *Scheffer*, 118 S.Ct. at 1266 n. 7.

(1967)). To be entitled to habeas relief, petitioner must show that the prosecution knowingly used perjured testimony. *See id.* As the Supreme Court has not yet ruled that polygraphy evidence is an inherently reliable indicator of deception, the petitioner cannot show that the prosecution knowingly used or failed to correct perjured testimony by Schaefer. The prosecution was simply "not required to believe that the polygraph examiners could tell it when and where Schaefer was telling the truth or lying."

In light of the precedent regarding admissibility of polygraph evidence and State use of perjured testimony established at the time of petitioner's state court proceedings, it cannot be said that the state court's decision was so clearly incorrect as to not be debatable among reasonable jurists. Therefore, the district court's denial of petitioner's due process claim was not in error.

### B. Confrontation Clause Claim

██ Petitioner's second argument is that the trial court's refusal to permit impeachment of Schaefer with his polygraph results violated petitioner's rights under the Confrontation Clause of the Sixth Amendment. The Confrontation Clause guarantees the right of a criminal defendant to be confronted with the witnesses against him. *See* U.S. Const. amend. VI. In reviewing the instant habeas petition, the district court concluded that the Michigan Court of Appeals made no unreasonable application of federal law when it affirmed the trial court's decision, because

the court's ruling was within the reasonable limits on cross-examination allowed by the Constitution based on such concerns as confusion, prejudice, and relevancy.

On appeal, petitioner urges us to consider that juries frequently hear testimony such as other instances of sexual misconduct by witnesses in criminal sexual conduct cases, or witnesses' prior criminal records involving crimes of dishonesty or false statements, with a limiting instruction to evaluate the evidence only as it regards credibility and not as substantive evidence of guilt or innocence. In similar fashion, petitioner urges the admission of Schaefer's polygraph results to impeach his credibility. Petitioner's argument, however, overlooks the standard of review that we must apply.[2] As discussed in Part A of this opinion, at the time of the state court's decision, the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), had just recently held that *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923) was superseded by the Federal Rules of Evidence and that expert testimony could be admitted if the district court deemed it both relevant and reliable. *Daubert* did not, however, reflect a change in the Court's position on the reliability of polygraph evidence. The Court's decision in *Scheffer* confirmed that no consensus exists that polygraph evidence is inherently reliable; states are free to enact per se prohibitions on introduction of polygraph evidence for precisely this reason.[3] In

2. Petitioner also urges the panel to consider decisions of "other jurisdictions" that have permitted polygraph evidence for impeachment purposes. Petitioner's numerous citations to state and federal court of appeals cases in which polygraph evidence has been held admissible cannot, however, assist the panel in its determination of whether the trial court engaged in "unreasonable application" of clearly established Supreme Court precedent.

3. The standard for admission of polygraph evidence in Michigan was set forth by the

Supreme Court of Michigan in *People v. Barbara*, 400 Mich. 352, 255 N.W.2d 171 (1977). In that case, the Court reaffirmed its rule that the results of polygraph tests are not admissible in criminal trials. *Barbara*, 400 Mich. at 359, 255 N.W.2d at 173. *But see People v. McKinney*, 137 Mich.App. 110, 116–17, 357 N.W.2d 825, 828–29 (1984) (polygraph evidence may be admissible in both pre and post-trial motions under the limited conditions set forth in *Barbara*, 400 Mich. at 412–13, 255 N.W.2d at 197–98). Nor is it likely that, had this case been tried in federal court, the Sixth Circuit would find Schaefer's poly-

stark contrast to plaintiff's argument that cross-examining Schaefer about his polygraph results would have assisted the jury in its decision whether to believe Schaefer's or petitioner's version of events, the Supreme Court in *Scheffer* observed that a per se exclusion of polygraph evidence actually *preserves* "the jury's core function of making credibility determinations in criminal trials." *Scheffer*, 118 S.Ct. at 1266.

By its very nature, polygraph evidence may diminish the jury's role in making credibility determinations. The common form of polygraph test measures a variety of responses to a set of questions asked by the examiner, who then interprets these physiological correlates of anxiety and offers an opinion to the jury about whether the witness ... was deceptive in answering questions about the very matters at issue in the trial. Unlike other expert witnesses who testify about factual matters outside the jurors' knowledge, such as the analysis of fingerprints, ballistics, or DNA found at a crime scene, a polygraph expert can supply the jury only with another opinion, in addition to its own, about whether the witness was telling the truth.

*Scheffer*, 118 S.Ct. at 1267 (internal citation omitted).

█ While cross-examination is the chief means by which criminal defendants may exercise their right to confront witnesses, *see Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, preju-

dice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In this case, the district court determined that the trial court's refusal to permit cross-examination regarding Schaefer's polygraph results did not prevent defense counsel from effectively attacking Schaefer's credibility. In *People v. Mechigian*, 168 Mich.App. 609, 425 N.W.2d 199 (1988) (per curiam), the prosecution's primary witness against a defendant charged with conspiracy and energy fraud failed three polygraph tests before passing a fourth test and being allowed to withdraw his guilty plea and plead guilty to a lesser charge. The Court of Appeals of Michigan affirmed the trial court's exclusion of evidence to this effect on grounds that the defense counsel could cross-examine the witness in an effective manner without reference to the polygraph results.

We are not convinced that an explanation of the circumstances in this instance necessarily involves the admission of testimony concerning polygraph testing. We are of the view that questions can be framed to place the relevant circumstances of the reduced plea before the jury without recourse to polygraph testimony. Evidence of polygraph examinations may not be used to show a witness' credibility. What is pertinent to [the witness'] credibility in his plea agreement is, of course, any consideration he received or circumstance that might furnish a motive or incentive to lie. Further, any prior inconsistent statements concerning the events at issue that he may have made in the course of carrying out his plea bargain are relevant. His

graph results admissible at trial. The Sixth Circuit has consistently recognized that in the absence of a prior agreement between the parties that the results of a polygraph examination would be admissible, the probative value of the polygraph is substantially less because the defendant has no adverse interest at stake in the polygraph. *Conti v. Commissioner*, 39 F.3d 658, 662–63 (6th Cir.1994), *cert.*

*denied*, 514 U.S. (1995); *Wolfel v. Holbrook*, 823 F.2d 970, 974 (6th Cir.1987), *cert. denied*, 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988). There is nothing on record in this case to suggest any prior agreement existed between Schaefer and the prosecution that his polygraph results would be admissible at trial.

failure on three polygraph examinations adds nothing to the issue of whether he had motivation to lie.

*Mechigian*, 425 N.W.2d at 200 (internal citation omitted). The record supports the conclusion that in this case, defense counsel succeeded in extensively cross-examining Schaefer regarding his plea bargain (which would itself constitute an incentive to lie), about prior false statements to the police, and inconsistencies in his account of the robbery.

The decisions of the trial court and Court of Appeals of Michigan to refuse cross-examination of Schaefer with his polygraph results did not involve unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States. These decisions did not foreclose petitioner's opportunity or ability to cross-examine Schaefer in a thorough and effective manner and therefore did not violate his Sixth Amendment right to confront the witnesses against him. Accordingly, the district court's denial of petitioner's Confrontation Clause claim was not in error.

## CONCLUSION

Having carefully considered the record on appeal, the briefs of the parties, the arguments of counsel, and the applicable law, we AFFIRM the district court's denial of petitioner's petition for a writ of habeas corpus.