PEOPLE v McKINNEY

Docket No. 71287. Submitted April 9, 1984, at Detroit.—Decided
September 4, 1984. Leave to appeal applied for.

Darryl McKinney was charged with possession of a short-barreled
shotgun, Recorder's Court of Detroit. At a hearing to suppress
the shotgun as evidence, the court allowed the admission of
evidence of the results of a polygraph examination that defen-
dant had requested and the court had permitted. The court,
Samuel H. Olsen, J., suppressed the shotgun as evidence and
dismissed the charge. The people appealed. *Held:*

Results of a polygraph examination are admissible in the
discretion of the court in a hearing on a pretrial motion to
suppress evidence where: (1) the results of the test are offered
on behalf of the defendant, (2) the test was taken voluntarily,
(3) the professional qualifications of the polygraph examiner,
the quality of the equipment, and the procedures employed are
approved, (4) either the prosecutor or the court may obtain an
independent examination of the subject or of the test results,
(5) the results are considered only with regard to the general
credibility of the subject, (6) the affidavits or testimony of the
polygraph operator are kept as a separate record and not used
in any way at the subsequent trial, and (7) the judge granting
suppression on the basis of the polygraph test results does not
thereafter sit as a trier of fact in the case.

Affirmed.

CRIMINAL LAW — POLYGRAPH EXAMINATIONS — SUPPRESSION OF EVI-
DENCE.

Results of a polygraph examination are admissible in the discre-
tion of the court in a hearing on a pretrial motion to suppress
evidence where (1) the results of the test are offered on behalf
of the defendant, (2) the test was taken voluntarily, (3) the
professional qualifications of the polygraph examiner, the qual-
ity of the equipment, and the procedures employed are ap-

REFERENCES FOR POINTS IN HEADNOTE

29 Am Jur 2d, Evidence § 831.

Psysiological or psychological truth and deception tests. 23 ALR2d
1306.

proved, (4) either the prosecutor or the court may obtain an independent examination of the subject or of the test results, (5) the results are considered only with regard to the general credibility of the subject, (6) the affidavits or testimony of the polygraph operator are kept as a separate record and not used in any way at the subsequent trial, and (7) the judge granting suppression on the basis of the polygraph test results does not thereafter sit as a trier of fact in the case.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Kevin G. Simowski,* Assistant Prosecuting Attorney, for the people.

*Sheldon Halpern,* for defendant.

Before: Hood, P.J., and M. J. Kelly and R. C. Livo,* JJ.

Hood, P.J. The people appeal as of right from the trial court's grant of defendant's motion to suppress evidence and order dismissing the charge against defendant.

The people charged defendant with possession of a short-barreled shotgun, MCL 750.224b; MSA 28.421(2). Following arraignment, defendant moved to suppress the sawed-off shotgun as evidence at trial. At the hearing on that motion, Detroit Police Officer William Fraser testified that he and his partner, Officer Michael Hendrix, were in a scout car when they stopped defendant's automobile for a traffic violation, glaring headlights. Defendant was the driver and had a passenger in the front seat and another in the rear seat. Officer Fraser testified that he looked into the front seat of defendant's car and saw the handle of a sawed-off shotgun protruding from a black duffel

* Circuit judge, sitting on the Court of Appeals by assignment.

bag lying on the floor between defendant and his front seat passenger. Fraser seized the gun and arrested defendant and his passengers.

Officer Hendrix testified that, after Officer Fraser had ordered the three occupants out of defendant's car, Fraser entered the car and brought out the shotgun. Officer Hendrix stood at the rear of the car and, therefore, did not see the shotgun until Officer Fraser held it.

Defendant testified that the officers stopped him while he was on his way to a band rehearsal. Immediately prior to the stop, defendant said he had purchased the shotgun at a party store for $26. After he purchased the gun, he wrapped it in a towel, placed the wrapped gun in a black duffel bag, and zipped the bag closed. Defendant said he placed the duffel bag under the front seat of his car.

Walter Strickland, a passenger in defendant's car, testified that the gun was wrapped in a towel within the zipped up bag which was lying flat under the front seat. Strickland said Officer Fraser took the bag out, unzipped it, and held the gun in the air. The officer then ordered all three occupants to go to the rear of the car.

William McKinney, defendant's brother, testified that he had been driving his car immediately ahead of defendant's car when he saw the police officers stop defendant. William McKinney pulled over, exited from his car, and went to his brother's car. He had witnessed his brother's purchase of the shotgun moments before. He saw his brother wrap the gun in a towel, place it in the duffel bag, and zip up the bag. William McKinney said he saw Officer Fraser, take the duffel bag out of his brother's car, unzip it and remove the shotgun.

Following the above testimony, defendant re-

quested that he be permitted to take a polygraph examination due to the disparity in the testimony and because defendant and his witnesses had testified that they had never been previously convicted of a crime and were all employed. The court allowed the state police to administer the requested polygraph examination.

Defendant later offered the polygraph examination results into evidence. The prosecutor objected, arguing that the examiner's written result was hearsay and that the Supreme Court did not recognize polygraph examination results as admissible in court for any purpose other than as evidence at a post-conviction hearing. The trial court admitted the examination result. That exhibit contained the following opinion:

"It is the opinion of the undersigned examiner that based upon an analysis of the polygraph from Darryl McKinney that he is being truthful to the issue. The court should also take into consideration that it is the opinion of this office that Mr. McKinney believes that the shotgun was not protruding from the bag. There is a possibility though that Mr. McKinney could be mistaken, and it's believed the only way to know for sure if that gun was exposed, like the officer is claiming, would be to administer a polygraph examination to the officer, who claims in fact that the gun was in plain view for him to see."

Defendant argued that the gun should be suppressed because Officer Fraser had no right to go into the bag; Officer Fraser unlawfully seized and searched the bag. The prosecutor responded that, if the court believed the officer's account, then the motion to suppress should be denied. The court responded:

"Well, the court listened carefully to all of the testi-

mony, including the testimony of the police officer. I am not prepared to state on the record that I find that the officer lied under oath. He could be mistaken, but I certainly don't believe he intentionally falsified his testimony.

"On the other hand I listened carefully to the testimony of the defendants and I have considered all of the facts in this case, and it's the court's ruling that the motion to suppress the evidence will be granted by the court."

The sole issue presented on appeal is whether the trial court erred by admitting the polygraph examination results into evidence during the hearings on the motion to suppress.

In *People v Barbara,* 400 Mich 352; 255 NW2d 171 (1977), the Court held that polygraph evidence, while inadmissible at trial, could be admitted at a motion for new trial under limited circumstances. In that case, the motion for new trial was requested on the basis of newly discovered evidence. The polygraph examination would be used to bolster the credibility of a new witness. The Court said:

"[T]he issue in this case is whether polygraph tests could be used to bolster the testimony of a new witness (the defendant's own test is immaterial since he had already testified at trial and the jury rejected his testimony).

"In short, is the character of the proceedings on a motion for new trial because of newly discovered evidence so significantly different from the proceedings at trial as to permit the use of polygraph tests in the one and deny its use in the other?

"The answer is that the procedure at trial and at a post-conviction hearing for new trial is different and significantly so. The procedures are significantly different because their purposes are significantly different. The purpose of a trial is to determine the guilt or

innocence of the defendant. The purpose of a post-conviction hearing for a new trial is, as its name suggests, an action to determine whether there should be such a trial. *It is a preliminary, not a final procedure.*

"The implication of this difference is basic. Since the defendant's guilt or innocence is not at issue, some procedures are permissible which would not be acceptable at trial. For example, the motion may be argued on the basis of affidavits, which, of course, would not be possible at trial. It does not determine the defendant's guilt or innocence.

"The question arises therefore whether, under these post-trial conditions *preliminary to actual trial,* the judge may exercise his or her sound discretion as to whether to be guided in the exercise of that discretion by the results of a polygraph test. In other words, may the judge at this stage prior to trial exercise a discretion similar to that which the prosecutor often exercises before going to trial, namely consider the results of a voluntarily taken polygraph test?

"In our opinion the judge in a post-conviction hearing on a motion for new trial based on newly found evidence may in his or her discretion consider the results of a polygraph examination." *Barbara, supra,* pp 411-412. (Emphasis added.)

The prosecutor argues that *Barbara* stands for the proposition that polygraph examination results may not be used in any pre- or post-trial matters except a post-conviction hearing on a motion for new trial. We disagree.

In our view, the rationale of the *Barbara* decision applies equally well in this situation. A motion to suppress evidence is often a matter preliminary to trial. The question presented is not the ultimate one of defendant's guilt or innocence. Rather, the question is a legal one to be decided by the trial court. In many cases, as in this, the trial court's decision rests upon a credibility determination. While a polygraph examination result ought

not be determinative, it might be useful to assist the court in determining credibility or veracity. If so, a trial court should have the discretion to consider polygraph examination results in making that determination. The trial court in this case did not abuse its discretion if it considered defendant's polygraph examination results. The trial court found the defendant and his corroborating witnesses credible and chose not to believe Officer Fraser.

Because Officer Fraser removed a gun from defendant's car that was not within plain view, his search and seizure of the duffel bag was not excepted from the prohibition against unreasonable searches and seizures. *People v Dugan,* 102 Mich App 497, 503-504; 302 NW2d 209 (1980). Because the shotgun was seized illegally, it must be suppressed as evidence. *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961); *People v White,* 392 Mich 404; 221 NW2d 357 (1974), *cert den* 420 US 912; 95 S Ct 835; 42 L Ed 2d 843 (1975). Therefore, the trial court's ruling was not clearly erroneous. *People v Castle,* 126 Mich App 203, 207; 337 NW2d 48 (1983).

The prosecutor also argues on appeal that the trial court did not follow the *Barbara* procedural requirements. The Court in *Barbara* enumerated nine conditions polygraph evidence must meet to be admissible at a post-conviction hearing for a new trial:

"(1) The results of the polygraph tests are offered on behalf of the defendant.

"(2) The polygraph test was taken voluntarily.

"(3) The professional qualifications of the polygraph examiner are approved.

"(4) The quality of the polygraph equipment is approved.

"(5) The procedures employed are approved.

"(6) Either the prosecutor or the court may ask the subject of the polygraph examination to be examined by a polygraph operator of the court's choice or such operator may be asked to review the offered data with the original operator, or both.

"(7) The test results shall be considered only with regard to the general credibility of the examinee not as to the truth or falsehood of any particular statement.

"(8) The affidavits or testimony of the polygraph operator shall be a separate record and shall not be used in any way at any subsequent trial.

"(9) A judge granting a new trial on the basis of polygraph tests shall not thereafter act as a trier of fact in that case but may preside with a jury. A substitute judge as trier of fact shall not be privy to the polygraph examination or results, or to the fact that a polygraph examination was taken or was in any way involved." 400 Mich 412-413.

We agree that these requirements apply as well to consideration of polygraph examination evidence at a pretrial motion to suppress. Of course, number nine must reflect the nature of the pretrial motion. A trial judge denying a motion to suppress where a polygraph test is considered may not preside at a subsequent bench trial. Nevertheless, the people's procedural argument has no merit. The prosecutor failed to object below on this basis and, thus, has not preserved a record on this issue for appeal. MRE 103(a).

Affirmed.