*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
August 19, 2021

v

No. 352979
Washtenaw Circuit Court
LC No. 19-000045-FH

ROBERT ROLEKE,

        Defendant-Appellant.

Before: BORRELLO, P.J., and SERVITTO and STEPHENS, JJ.

PER CURIAM.

A jury convicted defendant of two counts of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(b) (force or coercion). The trial court sentenced defendant to concurrent sentences of five years' probation for each count. Defendant appeals as of right, alleging violations of his right to due process and to a speedy trial based on prearrest delay in prosecution, challenging the district court's bindover decision, raising several claims of prosecutorial misconduct, challenging certain evidentiary rulings by the trial court, and challenging the trial court's denials of his motion for a directed verdict of acquittal and his renewed motion for a directed verdict or a new trial. For the reasons set forth in this opinion, we affirm defendant's convictions.

## I. RELEVANT FACTS AND PROCEEDINGS

This case arises from 2012 allegations that defendant, while acting as a volunteer Catholic minister to inmates in the Washtenaw County Jail, inappropriately touched the victim, who was an inmate at the jail. The incident was alleged to have occurred at some point in late 2012. In early 2013, defendant was charged with second-degree criminal sexual conduct (CSC-II) on the basis of the incident, but the case was dismissed on July 19, 2013, by the trial court following a motion by defendant. In October 2018, defendant was charged with two counts of CSC-IV on the basis of the same 2012 conduct. Following the preliminary examination, defendant was bound over to the circuit court for trial.

Defendant subsequently filed several motions that are subjects of this appeal. Defendant moved to have the bindover quashed and the charges dismissed. Defendant argued that the bindover should be quashed because the victim's vague, uncertain, and uncorroborated assertion

of sexual contact did not merit belief and the victim's credibility was further impugned by his repeated incarcerations and history of theft-related convictions. Defendant asserted in his motion to dismiss the charges against him that the prosecutor's unjustified, six-year delay in bringing charges substantially prejudiced defendant by making it almost impossible to find witnesses and by resulting in a loss of witness memory. After hearing oral argument and taking the matters under advisement, the trial court issued orders denying both motions. Defendant then moved to admit evidence of the victim's prior convictions into evidence and to exclude the MRE 404(b) evidence proposed for admission by the prosecution. The trial court allowed admission of the conviction for which the victim was incarcerated in 2012 at the time of the alleged sexual contact but precluded admission of the remaining convictions. Defendant sought to preclude MRE 404(b) evidence from three former inmates of the Washtenaw County Jail and an official at the Maxey Training School at Whitmore Lake where defendant had also volunteered at some point. The trial court granted defendant's motion with respect to two of the former inmates, and reserved its ruling on the other inmate and the official at the training school.

Defendant's two-day trial began in December 2019. The key witnesses for the prosecution were the victim and Richard Williams. In 2012, Williams was a sergeant with the Washtenaw County Sheriff's Department and worked in the Corrections Department. He was specifically responsible for oversight related to volunteers who came to the Washtenaw County Jail for purposes of providing educational and religious services to inmates. Williams knew defendant in defendant's capacity as a "Christian volunteer" and "one of the leaders in the Catholic religion" at the jail.

The victim testified that at the time of the incident, he was incarcerated on a charge of attempted larceny from a vehicle and had a substance abuse problem. While incarcerated, he attended church services and individual counseling sessions with defendant. Both the church services and counseling sessions were held in the jail. The counseling took place in one of the private meeting rooms in the Intake, Transfer, and Release (ITR) area. Williams testified that each meeting room in the ITR area was furnished with a table and plastic chairs, and each of these rooms had windows that made it easy to see in. However, there was no audio or visual surveillance inside the rooms because the rooms were used for confidential meetings, such as those between inmates and their attorneys. The rooms were near a desk that was usually staffed by three or four officers. Because there was no direct line of sight from the desk to the rooms, officers were required to walk past the rooms at least once an hour.

The victim testified that during his last one-on-one visit with defendant in one of the meeting rooms, defendant arranged the chairs so that he and defendant were facing the wall with their backs to the door. The victim also testified that he did not actually see defendant move the chairs. The victim further testified that while defendant was praying over him, defendant put his hand on the victim's inner thigh and then grabbed the victim's "ball sack." Defendant was also fondling himself. The victim stated that he caused a scene and had to be put in a holding cell to calm down.

Sometime later, a jail staff member overheard the victim tell another religious volunteer that he was avoiding defendant because he touched his body in ways that made him feel uncomfortable. The staff member reported the conversation to Williams, who then interviewed the victim and had the victim provide a written statement. Williams revoked defendant's clearance

while the investigation was ongoing. In his written statement, the victim reported that defendant had grabbed his private area.

After the prosecution completed its case-in-chief, defendant moved for a directed verdict of acquittal, arguing that the only witness who testified as to the alleged sexual assault was the victim, and his testimony was too vague, inconsistent, and uncorroborated to be believed. The trial court denied the motion, reasoning in relevant part that it was the jury's role to make those determinations.

As the defense proceeded with its case, defendant testified at length about his involvement with the Catholic religious offerings at the jail, which included group church services, Bible classes, and individual counseling. All the services were voluntary. Explaining his approach to praying with people during individual counseling, defendant said that at the end of his counseling sessions, he would ask people if he could pray for them. If they said yes, he would ask if he could lay hands on them; if they said no to the laying on of hands, he would not touch them. He testified that the laying on of hands during prayer was scriptural, but not necessary; it was voluntary and could not be forced. He further indicated that he only touched a person's head, shoulders, or hand when praying over the person.

Regarding the 2012 incident, defendant testified that he remembered seeing the victim at the group services a few times and he remembered seeing him in individual counseling sessions at least once, but no more than three times. He said that he met with the victim in one of the ITR rooms, that he never rearranged the chairs in the room, and that he typically sat at a chair facing the door. Defendant denied touching the victim's leg, knee, thigh, or crotch, and he denied touching his own crotch or fondling himself at any point during his meeting with the victim. He did not remember the victim causing a scene of any kind, had no reason to believe after their last counseling session that there was a problem between them, and had no memory of the victim seeming upset or angry.

The defense called two witnesses who were involved in the jail ministry with defendant, and both testified that defendant had a reputation for honesty and that their experiences with him were consistent with that reputation. The victim's cousin, Mick Russell, testified that the victim was a "scammer" who told him in 2014 that the story about defendant sexually assaulting him "was a scam for money," that he wanted to file a lawsuit, and that he wanted to get a criminal conviction to help his civil lawsuit. According to Mick, the victim told him that the sexual assault did not occur. Mick knew defendant through defendant's volunteer jail ministry work in the Washtenaw County Jail because Mick had also been an inmate at the jail. Mick further testified that he had known the victim his "whole life" and that he and the victim had committed some of their "first crimes" together. Mick's wife, Misty Russell, testified that she had known the victim since childhood, that the victim had a reputation for being dishonest, and that her own interactions with him were consistent with that reputation. Misty was also present during the above-mentioned conversation between the victim and Mick. According to Misty, the victim indicated that the allegations against defendant were part of "a plot to get money, I don't know, from the county or from the Catholic community." Misty testified that the victim indicated that other inmates were also involved and that he and "a few other inmates were getting together in hopes to get some money."

After the Russells' testimony, the trial court allowed the defense to call two other character witnesses who had known defendant personally for many years. Both testified that defendant was a man of integrity, and one opined that the people whom defendant counseled would agree that he was "honest, straightforward, very concerned about other people and working with them."

As already indicated, the jury returned a verdict of guilty on both charges. Before sentencing, defendant filed a renewed motion for a directed verdict or, alternatively, a new trial, arguing that the evidence was insufficient, that the verdict was against the great weight of the credible evidence, that numerous instances of prosecutorial misconduct had occurred during trial, and that the verdict was attributable more to passion and prejudice than to consideration of the record evidence. After hearing oral arguments, the trial court denied the motion. The trial court sentenced defendant as previously indicated. Defendant now appeals.

## II. DUE PROCESS: PREARREST DELAY

Defendant first argues that his due-process rights were violated by the prosecution's unjustified prearrest delay of nearly 6 years in prosecuting the CSC-IV charges after the CSC-II charge was dismissed in 2013. Defendant argues that the trial court erred by denying his motion to dismiss the CSC-IV charges based on the prearrest delay in prosecution.

This Court reviews for an abuse of discretion a trial court's ruling on a motion to dismiss. *People v Adams*, 232 Mich App 128, 132; 591 NW2d 44 (1998). "A challenge to a prearrest delay implicates constitutional due process rights, which this Court reviews de novo." *People v Cain*, 238 Mich App 95, 108; 605 NW2d 28 (1999).

"A prearrest delay that causes substantial prejudice to a defendant's right to a fair trial and that was used to gain tactical advantage violates the constitutional right to due process." *People v Woolfolk*, 304 Mich App 450, 454; 848 NW2d 169 (2014), aff'd 497 Mich 23 (2014). "A defendant has the burden of coming forward with evidence of prejudice resulting from the delay while the prosecutor has the burden of persuading the reviewing court that the delay was not deliberate and did not prejudice the defendant." *Cain*, 238 Mich App at 108. "If a defendant demonstrates prejudice, the prosecution must then persuade the court that the reason for the delay sufficiently justified whatever prejudice resulted." *People v Patton*, 285 Mich App 229, 237; 775 NW2d 610 (2009).

Thus, the first question to address is whether defendant demonstrated that the prearrest delay resulted in "actual and substantial prejudice to the defendant's right to a fair trial"; dismissal of the charge is not warranted if a defendant fails to make this showing. *Id*. (quotation marks and citation omitted); *Cain*, 238 Mich App at 109-110; *Adams*, 232 Mich App at 134, 136-139. "Substantial prejudice is that which meaningfully impairs the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected." *Patton*, 285 Mich App at 237. "[A]ctual and substantial prejudice requires more than generalized allegations," *id*. (quotation marks and citation omitted; alteration in original), and "[d]efendant must present evidence of actual and substantial prejudice, not mere speculation," *Woolfolk*, 304 Mich App at 454.

In this case, defendant asserts in general terms that the prosecution's delay of approximately 6 years between the time of the allegations and the time that defendant was charged with CSC-IV prejudiced his defense because it made it difficult "to identify and locate certain material witnesses, such as other jail inmates who were incarcerated in the jail during the alleged incident in late 2012," and resulted in the diminished memory of defendant and "other material witnesses." However, "[a] defendant cannot merely speculate generally that any delay resulted in lost memories, witnesses, and evidence, even if the delay was an especially long one." *Woolfolk*, 304 Mich App at 454 (citations omitted).

Here, defendant has not indicated that any specific witness exists who would have provided testimony helpful to his defense, nor has defendant described the nature of any such testimony that he was unable to present. He instead relies on speculation that such information could potentially exist and that witnesses potentially could have been located to provide that testimony. Defendant has also merely asserted that memories of defendant and other unspecified witnesses had diminished over time without providing any further explanation of how his defense was actually affected in any specific way regarding the particular incident at issue. Because defendant has not presented any evidence to support his speculative claims of prejudice based on missing witnesses or diminished memory, these assertions do not demonstrate that he suffered actual and substantial prejudice. *Patton*, 285 Mich App at 237; *Woolfolk*, 304 Mich App at 454.

Additionally, defendant argues that "the substantial delay in prosecution had the other effect of preventing defense counsel from impeaching [the victim] by record of additional prior felony Larceny and B/E convictions pursuant to MRE 608 and 609 because the 7-year delay in trial caused the trial court to exclude record of some of his prior convictions based on the 10-year time limit set forth in MRE 609(c)." However, in the context of this argument, defendant does not specifically address any particular conviction or convictions that he believes should not have been excluded by the trial court. Defendant instead generally asserts that "[w]hile all 7-8 prior felony convictions on [the victim's] record might not have been admitted during a 2013 trial, more than just the one prior conviction admitted at the 2019 trial would have been admitted for the jury to properly consider the credibility of his testimony."

On the basis of defendant's completely undeveloped argument on this point, we conclude that defendant has abandoned this argument. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Green*, 313 Mich App 526, 535; 884 NW2d 838 (2015) (quotation marks and citation omitted).

Nonetheless, even considering the merits of defendant's apparent argument, he has not demonstrated substantial prejudice on this ground. MRE 609 provides in relevant part as follows:

> (a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and
>
> > (1) the crime contained an element of dishonesty or false statement, or

(2) the crime contained an element of theft, and

(A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

(B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

\* \* \*

(c) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.

Pursuant to defendant's pretrial motion in limine seeking to admit multiple prior convictions from the victim's criminal record, the trial court ruled that defendant could admit evidence of the victim's 2012 larceny-from-a-motor-vehicle conviction for which the victim was in jail at the time of the incident at issue in this case. The trial court ruled that the victim's remaining criminal convictions were not admissible under MRE 609. On appeal, defendant contends that admitting more of the victim's prior convictions into evidence would have aided the jury in its assessment of the victim's credibility.

Yet, despite the trial court's denial of defendant's motion in limine with respect to all but one of the victim's prior convictions, defendant was able to present substantial evidence aimed at attacking the victim's credibility. Additionally, even with the delay, defendant was not prohibited from presenting evidence that supported defendant's trial defense that the victim fabricated the sexual assault as part of a scheme to obtain money.

As an initial matter, when the prosecutor asked the victim early in his direct testimony about why the victim was in jail at the time of the 2012 incident, the victim responded, "Retail fraud. I'm pretty sure." After his memory was refreshed, the victim indicated that he was actually incarcerated for attempted larceny from a motor vehicle. The victim also testified that he was in jail in 2018 when a police officer visited him to talk about the instant case. The victim's cousin, Mick Russell, testified that he and the victim committed some of their "first crimes" together. Thus, evidence was presented to the jury that the victim's 2012 conviction was not his only criminal offense.

Furthermore, although defendant argues that admitting more of the victim's criminal history would have undermined his credibility and thereby aided the defense, defendant was nonetheless able to present Mick's testimony that the victim was a "scammer" and had fabricated the allegations against defendant in an attempt to obtain money. Defendant was also able to present the testimony of Mick's wife, Misty, who corroborated Mick's testimony that the victim made the allegations against defendant as part of a plot to obtain money from the county or the Catholic community through a subsequent civil lawsuit.

-6-

In light of the evidence defendant was able to present in support of his defense theory, the inability to also admit evidence of the victim's additional prior convictions that may have been admissible had defendant been prosecuted sooner did not "meaningfully impair[] the defendant's ability to defend against the charge in such a manner that the outcome of the proceedings was likely affected" and defendant thus has not demonstrated that he suffered substantial prejudice on this basis. *Patton*, 285 Mich App at 237.

Because defendant has failed to show actual and substantial prejudice resulting from the prearrest delay, the trial court did not abuse its discretion by denying the motion to dismiss for prearrest delay. *Id.*; *Cain*, 238 Mich App at 109-110; *Adams*, 232 Mich App at 134, 136-139. As this Court has previously explained:

> Mere delay between the time of the commission of an offense and arrest is not a denial of due process. There is no constitutional right to be arrested. Rather, the guideline is whether the record presents evidence of prejudice resulting from the delay which violates a defendant's right to procedural due process. [*Patton*, 285 Mich App at 236 (quotation marks and citation omitted).]

## III. SPEEDY TRIAL

Next, defendant essentially attempts to recharacterize his prearrest delay argument as a violation of his right to a speedy trial. "Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial. US Const, Am VI; Const 1963, art 1, § 20." *People v Williams*, 475 Mich 245, 261; 716 NW2d 208 (2006). "[A] defendant's right to a speedy trial is not violated after a fixed number of days," but a delay of eighteen months or more is presumed to be prejudicial and shifts the burden to the prosecution "to show that there was no injury." *Id*. at 261-262. "The time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest." *Patton*, 285 Mich App at 236 (quotation marks and citation omitted).

In this case, defendant asserts that "[t]he substantial prearrest delay in prosecution violated defendant's constitutional Right to a Speedy Trial as embodied in the federal and state constitutions." Defendant appears to contend that his right to speedy trial is measured from the date of the incident underlying the criminal charges. However, *prearrest* delay does not form a basis for a claimed violation of the right to a speedy trial because " '[t]he time for judging whether the right to a speedy trial has been violated runs from the date of the defendant's arrest.' " *Patton*, 285 Mich App at 236, quoting *Williams*, 475 Mich at 261. The constitutional right to a speedy trial is distinguishable from the previously discussed due-process protection from prearrest delays that cause substantial prejudice to a defendant's right to a fair trial and that are "an intentional device to gain tactical advantage over the accused." *United States v Marion*, 404 US 307, 324; 92 S Ct 455; 30 L Ed 2d 468 (1971); see also *United States v MacDonald*, 456 US 1, 7; 102 S Ct 1497; 71 L Ed 2d 696 (1982) ("Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending.") (citation omitted). Defendant's argument incorrectly conflates these two concepts.

The United States Supreme Court has explained that "it is readily understandable that it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Marion*, 404 US at 320. Thus, the right to a speedy trial "attaches only when a formal criminal charge is instituted and a criminal prosecution begins." *MacDonald*, 456 US at 6.

In this case, once the charge against defendant was dismissed in 2013, he was no longer being held "to answer a criminal charge" and the speedy trial provision was no longer implicated. *Marion*, 404 US at 320. Yet, defendant continues to use this initial attempt at prosecution as his point of reference in arguing that his right to a speedy trial was violated. Defendant does not argue that his right to a speedy trial was violated as measured in reference to his subsequent arrest for the CSC-IV charges that were initiated in 2018. Defendant's approach is contradictory to the United States Supreme Court's holding in *MacDonald*.

In *MacDonald*, 456 US at 3, 8, 9-10, the Supreme Court held that the time between the dismissal of military charges against the defendant and his subsequent indictment on civilian criminal charges could not be factored into determining whether the delay had violated the defendant's constitutional right to a speedy trial because the speedy trial guarantee is not applicable once charges are dismissed. The Court reasoned as follows:

> The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

> Once charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life. This is true whether or not charges have been filed and then dismissed. This was true in *Marion*, where the defendants had been subjected to a lengthy investigation which received considerable press attention. But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, "a citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer." Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation. [*Id*. at 8-9 (citation omitted).]

In this case, defendant therefore has not established that his right to a speedy trial was violated because his right to a speedy trial was not implicated during the time after the charge against defendant was dismissed in 2013 until he was subsequently arrested and held to answer the 2018 CSC-IV charges. *Id.*; *Marion*, 404 US at 320; *Patton*, 285 Mich App at 236.

## IV. BINDOVER

Defendant next argues that the trial court abused its discretion by denying his motion to quash the bindover.

"A district court magistrate's decision to bind over a defendant and a trial court's decision on a motion to quash an information are reviewed for an abuse of discretion." *People v Bass*, 317 Mich App 241, 279; 893 NW2d 140 (2016) (quotation marks and citation omitted). "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v Anderson*, 501 Mich 175, 189; 912 NW2d 503 (2018) (quotation marks and citation omitted). If a lower court "selects one of these principled outcomes," it has not abused its discretion. *Id.* (quotation marks and citation omitted).

The Michigan Supreme Court has expressed the duty of a district-court magistrate at a preliminary examination as follows:

> [A] magistrate's duty at a preliminary examination is to consider all the evidence presented, including the credibility of witnesses' testimony, and to determine on that basis whether there is probable cause to believe that the defendant committed a crime, i.e., whether the evidence presented is sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt. [*Id.* at 178 (quotation marks and citation omitted).]

At the preliminary examination in this case, Williams testified that there were windows on the doors of the ITR rooms where defendant had one-on-one meetings with inmates and that the jail staff members working at the desk in that area of the jail would have had a partial view into each of the ITR rooms. The victim testified at the preliminary examination that during his last one-on-one meeting with defendant, defendant arranged his chair so he and the victim were sitting with their backs facing the window, they were praying, and defendant put his hand on the victim's inner thigh. The victim further testified that defendant then "grabbed my dick" and "I just blacked out, spazzed out." The victim jumped up and left. According to the victim, defendant was also "fondling" his own "private area," but the victim seemed to indicate that this occurred on a previous occasion. The victim also admitted in his testimony to having a history of criminal convictions for theft-related offenses and that he had been "in and outta jail."

The district court found that the victim's testimony was credible. The district court observed that the victim "seemed to have an appreciation for what is truth and what is not truth," as evidenced by his frequent attempts to expand on his answers to questions so as to tell what he believed to be the whole truth, attempts that the district court deemed to be "signs of great credibility." As to the effect of the victim's criminal history on consideration of his credibility, the district court opined that this could cut two ways. It could show either that the victim was not

to be believed, or that he was "low-hanging fruit" in the eyes of a predator. The district court surmised that the latter might be the case and rejected the former view "because I was able to sit and watch him as he testified." The district court bound defendant over to the circuit court after finding that there was probable cause to believe that defendant committed two instances of sexual contact: one on the victim's inner thigh and one on the victim's genitals.

On appeal, defendant challenges the bindover decision solely based on his claim that the victim's preliminary examination testimony, which provided the only description of the sexual assault, was not credible and not corroborated by any other witness testimony. The only other witness to testify at the preliminary examination was Williams, who did not witness the alleged assault. Defendant maintains that the district court abused its discretion in binding him over on the two counts of CSC-IV "[d]espite the vague claims made by [the victim], which were entirely uncorroborated, and despite [the victim's] admission to being in and out of jail with prior theft related convictions that made his testimony lack credibility."

First, with respect to defendant's argument about the lack of corroboration of the victim's testimony, defendant was charged with violating MCL 750.520e, and "[t]he testimony of a victim need not be corroborated in prosecutions under sections 520b to 520g," MCL 750.520h. Turning to defendant's argument regarding the victim's credibility, our Supreme Court has explained that "in reviewing a magistrate's credibility determination, an appellate court must remain mindful that the judge who hears the testimony has the distinct advantage over the appellate judge, who must form judgment solely from the printed words." *Anderson*, 501 Mich at 189 (quotation marks and citation omitted). In the instant case, the district court articulated a reasoned basis for finding the victim's testimony credible, including the court's ability to observe the victim as he testified. The district court's credibility determination, and its decision to bind defendant over to the circuit court, were not outside the range of reasonable and principled outcomes and thus did not constitute an abuse of discretion. *Id*. at 189-190. Accordingly, the trial court did not abuse its discretion by denying defendant's motion to quash the bindover.

## V. PROSECUTORIAL MISCONDUCT

Defendant asserts that the prosecutor committed misconduct requiring reversal by attempting to secure a conviction through inflaming the jurors' passion and prejudice rather than focusing on the facts of the case, mischaracterizing the facts, appealing to the jury's sympathy, vouching for the victim's credibility, and attempting to admit MRE 404(b) evidence that the trial court had already deemed inadmissible.

The test for prosecutorial misconduct is whether the criminal defendant "was denied a fair and impartial trial." *People v Rodriguez*, 251 Mich App 10, 29; 650 NW2d 96 (2002). "Prosecutorial misconduct issues are decided case by case, and the reviewing court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context." *Id*. at 30.

To preserve a claim of error involving prosecutorial misconduct, a defendant must contemporaneously object and must request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Review of alleged prosecutorial misconduct is precluded unless the defendant timely and specifically objects, except when an objection could not have cured the error, or a failure to review the issue would result in a miscarriage of justice." *People v*

*Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). Appellate review of unpreserved claims of prosecutorial misconduct is for outcome-determinative plain error. *Id*. Furthermore, "[r]eversal is warranted only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. An appellate court "cannot find error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *Bennett*, 290 Mich App at 476 (quotation marks and citation omitted). Preserved claims of prosecutorial misconduct are reviewed de novo. *Id*. at 475.

Defendant first contends that the prosecutor committed misconduct in her opening statement by analogizing the victim, who was 41 years old at the time of trial, to a child because the victim was allegedly vulnerable and groomed by defendant during the group meetings; referring to the victim as a member of a "protected class" when she analogized him to a child; asking the jury to "walk in [the victim's] shoes" and "think how he's feeling"; and arguing that the victim was "secluded off" in a room during the assault. Defendant asserts that these statements served to improperly arouse the sympathy of the jury. "A prosecutor may not appeal to the jury to sympathize with the victim." *People v Unger*, 278 Mich App 210, 237; 749 NW2d 272 (2008). Because defendant did not contemporaneously object to these statements or request curative instructions, these claims of error are unpreserved. *Bennett*, 290 Mich App at 475.

To the extent defendant claims that some of the above factual statements are mischaracterizations or false statements, we do not conclude that the prosecutor made false assertions of fact. The prosecutor acknowledged that the victim was an adult and did not claim that the victim was actually a child. The jury was also able to observe the victim when he testified. The trial testimony also reflects that the ITR room where the assault occurred was designed to afford some degree of privacy for attorney-client meetings, so it also does not seem clearly false to characterize the room as secluded.

The prosecutor's statements about the victim being part of a protected class and inviting the jury to think about how the victim was feeling were more problematic. The latter could be viewed as an improper appeal for the jury to sympathize with the victim. However, in context, it also appears that the prosecution may have been trying to further her argument that the victim may have hesitated to report the incident out of embarrassment or fear of reporting misconduct by an authority figure in the jail. Nevertheless, to the extent any of the above comments were improper, they were brief and any prejudicial effect could have been sufficiently alleviated by a timely curative instruction had one been requested. Thus, we find no error requiring reversal. *Unger*, 278 Mich App at 237; *Bennett*, 290 Mich App at 476.

Defendant next claims that the prosecutor committed misconduct in her closing argument by referring to defendant as a "lowly little inmate." However, viewing this comment in context, it is not clear that the prosecutor was referring to defendant specifically. The prosecutor's argument seems to be more properly understood as a description of the power dynamic between authority figures and inmates in the jail. Moreover, a timely curative instruction could have alleviated any potential prejudicial effect, but defendant did not timely object or request a curative instruction regarding this comment. Therefore, we find no error requiring reversal with respect to this unpreserved claim of error. *Bennett*, 290 Mich App at 475, 476.

Defendant next contends that the prosecution committed misconduct by vouching for the victim's credibility when commenting in her opening statement that he was "honest," and stating in her closing argument, "[t]hat's not someone who fabricates a sexual assault." A prosecutor cannot vouch for the credibility of a witnesses by suggesting that the prosecutor has special knowledge, not known to the jury, regarding the witness' truthfulness. *People v Bahoda*, 448 Mich 261, 276; 531 NW2d 659 (1995). "A prosecutor may, however, argue from the facts that a witness is credible or that the defendant or another witness is not worthy of belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

In this case, the prosecutor said in her opening statement regarding the victim: "He's honest, he's raw, you know he's still dealing with substance abuse problems." Viewed in context, the prosecutor's comments seem to be more of a description of the victim's unpolished style or manner than an assertion that the victim's statements are inherently truthful. In her closing argument, the prosecutor said of the victim: "He's embarrassed that everybody in the community knows about it now and everybody in the jail knows about it. That's not someone who fabricates a sexual assault." This statement constitutes an argument that the victim was credible based on his apparent embarrassment that others knew about the sexual contact, rather than improper vouching. Defendant did not timely object to either of these statements or request curative instructions, making this claim of error unpreserved. *Bennett*, 290 Mich App at 475. To the extent there was any potential for improper prejudice, such prejudice could have been adequately alleviated by timely curative instructions and we therefore do not find error requiring reversal. *Id*. at 476.

Defendant further asserts that the prosecutor committed misconduct by questioning defendant regarding MRE 404(b) evidence that the trial court had already ruled inadmissible.

In this respect, defendant first complains that the prosecutor improperly questioned him on cross-examination regarding prior complaints by inmates at the jail and introduced a 2010 letter into evidence that defendant had written in response to those complaints. As an initial matter, this particular evidence was not specifically part of the pretrial MRE 404(b) motion and defendant is incorrect to imply that the trial court's ruling on that pretrial motion also conclusively barred this evidence. Moreover, the prosecutor sought to elicit testimony about the letter after defendant denied ever having been the subject of previous accusations at the jail, and defense counsel timely objected to the prosecutor's attempt to introduce this evidence, challenging its admission on hearsay, MRE 404(b), and relevance grounds. The trial court overruled the objection with respect to the statement by defendant. The court further stated that its earlier MRE 404(b) ruling remained in place and that the prosecutor could continue questioning defendant subject to additional objections. On appeal, defendant does not explain how the prosecutor's successful admission of evidence at trial constituted misconduct. Therefore, defendant has abandoned this claim of error on appeal. *Green*, 313 Mich App at 535. Moreover, a "prosecutor's good-faith effort to admit evidence does not constitute misconduct." *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007).

Next, defendant argues that the prosecutor committed misconduct by violating the trial court's pretrial MRE 404(b) ruling and asking defendant on cross-examination about the incidents involving the two inmates whose testimony the trial court had precluded in its pretrial ruling on the motion in limine. In both instances, defense counsel timely objected to the questioning before

defendant provided any substantive testimony about these alleged incidents, and the trial court sustained the objections. To the extent there was any potential for prejudice stemming from the prosecutor's questions or her explanation of the proposed evidence and argument for its admission,[1] which occurred in front of the jury, any such prejudice could have been alleviated by timely curative instructions had they been requested; we thus find no error requiring reversal.[2] *Bennett*, 290 Mich App at 476. We additionally note that the jury was instructed that the lawyer's statements, questions, and arguments were not evidence. The jury was also instructed that it could only consider evidence that was admitted and could not consider evidence that the trial court excluded. "[J]urors are presumed to follow their instructions." *Unger*, 278 Mich App at 235.

Next, defendant argues that the prosecutor committed misconduct because "[t]he prosecutor's closing argument also focused on matters contained in a 2010 letter . . . which was admitted only as a prior statement of defendant, but which she improperly characterized as substantive 'corroborating evidence' of 'two other complaints,' which it was not, and improper propensity evidence about defendant[.]" This is the entirety of defendant's argument on this claim. Because of the complete lack of cogent development of this argument, we deem it abandoned. *Green*, 313 Mich App at 535. Moreover, defendant did not timely object or request a curative instruction regarding these statements. A proper curative instruction could have corrected any potential misstatement and alleviated any potential prejudice; thus, there was no error requiring reversal. *Bennett*, 290 Mich App at 476.

Defendant also contends that the prosecutor improperly led the victim to testify about polygraph evidence as follows:

> *Q*. Did you tell Mick what Brother Bob did to you, where he touched you?
>
> *A*. Everybody knows now. You know, all of Ypsi knows, everybody I know, everybody -- and after today every -- you know it's just -- man. You know I wish none of this wouldn't even have happened right now. I wish we all just be -- you guys just don't understand -- I mean –
>
> *Q*. Are you making --
>
> *A*. Huh?
>
> *Q*. Are you making it up?
>
> *A*. No. I'll take a liars tetanus (sic) test, whatever. Whatever, whatever.

---

[1] The prosecutor indicated in response to one objection that defendant was asked to leave the Department of Corrections for touching that particular inmate.

[2] The prosecutor also argued that this evidence was admissible in response to testimony defendant gave at trial about his background in volunteer jail ministry, despite that trial court's earlier ruling on the MRE 404(b) motion. A "prosecutor's good-faith effort to admit evidence does not constitute misconduct." *Dobek*, 274 Mich App at 70.

The prosecutor immediately moved on to a different subject.

As an initial matter, viewing this questioning in context, *Rodriguez*, 251 Mich App at 30, this line of questioning on redirect by the prosecutor was clearly responsive to defense counsel's questioning of the victim on cross-examination regarding whether the victim ever told Mick that he made up the allegations against defendant. There is no indication that the prosecutor was actually attempting to elicit polygraph evidence. Furthermore, the victim's apparent offer to take a polygraph test was completely nonresponsive to the prosecutor's question. Generally, an unresponsive answer by a testifying witness does not constitute prosecutorial misconduct unless the prosecutor knew in advance that the unresponsive testimony would be given or conspired with or encouraged the witness to give the improper unresponsive testimony. *People v Jackson*, 313 Mich App 409, 427; 884 NW2d 297 (2015). There is no record evidence of such knowledge, conspiracy, or encouragement by the prosecutor in this case. Accordingly, defendant has not demonstrated that the above exchange involved prosecutorial misconduct. *Id*.

Moreover, although defendant cites *People v McKinney*, 137 Mich App 110; 357 NW2d 825 (1984), for the proposition that polygraph evidence is forbidden at trials, the issue in that case involved the admissibility of actual polygraph examination results, *id*. at 114. In the present case, the victim's statement that he would take a polygraph test can hardly be considered testimony about "polygraph evidence" because the statement had nothing to do with actual polygraph examination results.

Furthermore, a proper curative instruction would have alleviated any potential prejudice stemming from this statement, but defendant did not timely object or request a curative instruction with respect to this comment. We thus find no error requiring reversal. *Bennett*, 290 Mich App at 476.

In light of the foregoing analyses, we conclude that defendant has failed to demonstrate prosecutorial misconduct requiring reversal.

## VI. PRIOR CONVICTIONS

Next, defendant argues that the trial court erred by excluding evidence of the victim's multiple prior convictions. We review a trial court's decision on the admission of evidence for an abuse of discretion, and we review preliminary questions of law de novo. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010).

Defendant maintains that the victim's "full criminal background as permitted by MRE 404, 405 and 609 should have been admitted so the jury could have had the entire story about him to better judge his credibility in the proper context of his life." However, other than quoting these rules of evidence and making a blanket assertion that the victim's entire criminal history of "theft related convictions" should have been admitted to show that "taking what does not belong to him was [the victim's] modus operandi in life," defendant has not engaged in any specific analysis of the admissibility of each of the prior convictions he sought to admit. Moreover, to the extent that he acknowledges the 10-year time limit on the admissibility of conviction evidence under MRE

609(c),[3] defendant's sole argument is that the trial court should have measured this period from the date of the original allegations rather than the date of trial.[4] Defendant cites no authority for this proposition. Because defendant has completely failed to develop any cogent or understandable argument demonstrating an error by the trial court, as well as failing to cite supporting authority for his foundational legal premises, defendant has abandoned this issue. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *Green*, 313 Mich App at 535 (quotation marks and citation omitted).

Moreover, even if we were to assume that the trial court abused its discretion in excluding evidence of the victim's prior convictions, any error was harmless. See *Gursky*, 486 Mich at 619 (stating that claims of preserved nonconstitutional errors, such as the erroneous admission of evidence, are reviewed for harmless error under MCL 769.26). MCL 769.26 provides:

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice.

Our Supreme Court explained in *Gursky*, 486 Mich at 619:

> In making this determination for preserved, non-constitutional error, this Court asks whether, absent the error, it is "more probable than not" that a different outcome would have resulted. The burden is on the defendant to show that the error resulted in a miscarriage of justice. Where the error did not result in a miscarriage of justice and a defendant cannot meet this burden, we have deemed the error "harmless" and thus not meriting reversal of the conviction. [Citations omitted.]

Defendant essentially claims that the victim's other prior convictions should have been admitted in order to attack the victim's credibility and support defendant's theory that the victim fabricated the assault as part of a scam to obtain money. However, as previously noted, defendant was still able to introduce substantial evidence for these purposes without admitting the evidence of the victim's other prior convictions. Evidence of the victim's conviction for which he was incarcerated at the time of the incident was admitted, and the victim provided unprompted testimony suggesting that he had been convicted for other offenses, including retail fraud. In addition, Mick testified that he and the victim had committed their first crimes together and that the victim was a "scammer." Both Mick and his wife unequivocally stated that the victim told

---

[3] This rule is quoted above in Part II of this opinion.

[4] Defendant seemingly advocates that this would operate as a form of sanction against the prosecution for its delay in charging defendant with these crimes. However, as we have already discussed, defendant does not have a constitutional right to be arrested, *Patton*, 285 Mich App at 236, and defendant's due process rights were not violated by the prearrest delay in this case.

them that the incident never happened and that it was a ploy to get money. On this record, it does not appear more probable than not that a different outcome would have resulted had more of the victim's prior convictions been admitted into evidence. *Gursky*, 486 Mich at 619. Accordingly, it does not affirmatively appear to us that the trial court's failure to admit the remaining prior convictions resulted in a miscarriage of justice. MCL 769.26. Defendant has failed to meet his burden of demonstrating that a miscarriage of justice occurred based on the exclusion of this evidence. *Gursky*, 486 Mich at 619.

## VII. CHARACTER WITNESSES

Next, defendant argues that the trial court abused its discretion by disallowing two of his proposed character witnesses. At trial, after defendant had presented his own testimony and the testimony of four other witnesses, the prosecution objected to four proposed character witnesses that defendant intended to additionally call, two of whom had known defendant personally for many years and two of whom were former jail inmates who had been impacted by defendant's jail ministry. The prosecution objected on the grounds that the proposed evidence would be cumulative and that the prosecution had allegedly not received contact information for these witnesses. The trial court ruled that the two witnesses who were not former inmates could testify but excluded the two former-inmate witnesses on the ground that their testimony would be cumulative.

A trial court's decision on the admission of evidence is reviewed for an abuse of discretion, and preliminary questions of law are reviewed de novo. *Gursky*, 486 Mich at 606. "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Unger*, 278 Mich App at 217.

As defendant notes, "MRE 404(a)(1) allows a criminal defendant an absolute right to introduce evidence of his character to prove that he could not have committed the crime." *People v George*, 213 Mich App 632, 634; 540 NW2d 487, 488 (1995) (quotation marks and citation omitted). MRE 404(a)(1) provides in relevant part that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except . . . [e]vidence of a pertinent trait of character offered by an accused . . . ."

In *George*, this Court held that it was reversible error for the trial court to have prohibited all three of the defendant's proposed character witnesses from testifying about his pertinent character trait and thus preventing the defendant from introducing any character evidence regarding this trait. *George*, 213 Mich App at 633-635.

In this case, however, defendant was not prohibited from introducing his proposed character evidence but was limited in the number of witnesses he could call for this purpose. Defendant presented five witnesses who testified to his honest character, including the testimony of Mick. Mick was a former jail inmate who, in addition to being the victim's cousin and testifying that the victim fabricated the allegations against defendant, also was a former inmate who knew defendant through defendant's involvement in the jail ministry program.

-16-

Mick testified that he believed that defendant had a good influence on him because he was a lapsed Catholic and defendant got him to go back to church. Mick further testified that defendant had a positive impact on his life and that it has been difficult to find people who can encourage and guide him like defendant did. Regarding defendant's reputation among other inmates for honesty and truthfulness, Mick said that inmates looked up to defendant, explaining:

> Like I said, he'll come in personal visits like, call you out or, you know, one-on-one thing with you and help you spiritually like, if there's something, pray with you, help you with the county jail services. Like, if you don't know how to do something, he'll put you in touch with who to, you know -- just helps out a lot. And like I said, a lot of guys from the neighborhood know him like, he's been around for years helping people in our life.

Mick testified further that his experience with defendant was consistent with defendant's reputation for being an honest person.

On appeal, defendant argues that he had an absolute right to present as many character witnesses as he desired and that any limitation on the number of witnesses he could present was error. Defendant does not cite any authority for such a proposition, and this argument is therefore abandoned. *Green*, 313 Mich App at 535. The circumstances of the present case are unlike those in *George* where the trial court excluded *all* of the defendant's proposed character witnesses.

Furthermore, the excluded testimony would have been cumulative of the character testimony provided by Mick, specifically as a former inmate, and more generally, the other character evidence provided by four other witnesses. Cumulative evidence is "[a]dditional evidence that supports a fact established by the existing evidence." *Black's Law Dictionary* (11th ed). Presenting two additional witnesses to testify as to defendant's character for truthfulness and honesty would have been of minimal probative value in light of the five other witnesses who had provided evidence of this simple fact. Accordingly, the trial court did not abuse its discretion by excluding defendant's additional proposed character witnesses from testifying. See MRE 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.")

## VIII. DIRECTED VERDICT

Next, defendant argues that the trial court erred by denying his motion for a directed verdict of acquittal. Defendant does include any argument directed at whether there was evidence of each element necessary to establish his convictions for CSC-IV. He thus apparently concedes that there was evidence of the necessary elements. Instead, the sole grounds on which defendant claims he was entitled to a directed verdict are that the victim's testimony was not corroborated by other evidence and that the victim's testimony was not credible. Defendant then proceeds to describe why he believes the victim's testimony of the assault should not have been believed. Frankly, defendant misunderstands the standards under which a directed verdict may be granted.

"We review de novo a trial court's decision denying a motion for a directed verdict." *People v McKewen*, 326 Mich App 342, 347 n 1; 926 NW2d 888 (2018). This Court must "review

the evidence in the light most favorable to the prosecution to determine whether the essential elements of the charged crimes were proved beyond a reasonable doubt." *Id*. "Due process commands a directed verdict of acquittal when 'sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt' is lacking. If the evidence presented by the prosecution in the light most favorable to the prosecution, up to the time the motion is made, is insufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt, a directed verdict or judgment of acquittal must be entered." *People v Lemmon*, 456 Mich 625, 633-634; 576 NW2d 129 (1998) (citations omitted). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *McKewen*, 326 Mich App at 347 n 1 (quotation marks and citation omitted; alteration in original).

Turning to defendant's arguments, his reliance on claiming that the victim's testimony was not corroborated is misplaced because a victim's testimony does not need to be corroborated in a prosecution for CSC-IV. MCL 750.520h. Defendant's attempt to relitigate the issue of the victim's credibility is also unavailing. The jury had the opportunity to observe all of the prosecution and defense witnesses testify. It is apparent that the jury found the victim's testimony about the assault more credible than defendant's testimony denying that any assault occurred. In reviewing a trial court's decision on a motion for a directed verdict, we must make credibility choices in support of the jury's verdict. *McKewen*, 326 Mich App at 347 n 1. Defendant has not demonstrated that the trial court erred by denying his motion for a directed verdict of acquittal.

IX. NEW TRIAL

Defendant contends that he is entitled to a new trial because the "great weight of credible, admissible evidence at trial weighed in favor of [defendant's] innocence" and the "prosecution's admissible evidence, as opposed to improper, inflammatory, and inadmissible evidence introduced by the prosecution, lacked credibility and did not overcome the constitutional presumption of [defendant's] innocence."

This Court reviews "for an abuse of discretion a trial court's grant or denial of a new trial on the ground that the verdict was against the great weight of the evidence." *Unger*, 278 Mich App at 232. "[A] new trial based upon the weight of the evidence should be granted only where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *Lemmon*, 456 Mich at 642 (quotation marks and citation omitted).

"New trial motions based solely on the weight of the evidence regarding witness credibility are not favored." *Id*. at 639. "[A]bsent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility for the constitutionally guaranteed jury determination thereof." *Id*. at 642 (quotation marks and citation omitted). "[W]hen testimony is in direct conflict and testimony supporting the verdict has been impeached, if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the jury." *Id*. at 643 (quotation marks and citation omitted).

Hence, the general rule is that "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *Id*. (quotation marks and citation omitted). A "narrow" exception exists where "the testimony contradicts indisputable physical

facts or laws, [w]here testimony is patently incredible or defies physical realities, [w]here a witness's testimony is material and is so inherently implausible that it could not be believed by a reasonable juror, or where the witnesses testimony has been seriously impeached and the case marked by uncertainties and discrepancies." *Id*. at 643-644 (quotation marks and citations omitted; alterations in original).

In this case, defendant's argument that the verdict was against the great weight of the evidence merely consists of his views of the evidence that would have supported an acquittal and his continued attacks on the victim's credibility. However, the mere fact that different interpretations and characterizations of the evidence are possible does not establish that the testimony of the victim and other testimony supporting the verdict "contradict[ed] indisputable physical facts or laws," was "patently incredible or defie[d] physical realities," or was "so inherently implausible that it could not be believed by a reasonable juror," nor does defendant's attempt to relitigate the trial on appeal establish that witness testimony was "seriously impeached" or that the case was "marked by uncertainties and discrepancies." *Id*. (quotation marks and citations omitted). We further note that despite defendant's assertion in arguing his great-weight issue, defendant has not identified any inadmissible evidence that was admitted. Defendant also speculates that the verdict was the result of passion or prejudice because of negative societal views of the Catholic church, but defendant has not provided any evidence to support this claim or that such prejudice tainted the jury.

Because "it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it," it was the jury's responsibility to resolve conflicts in the evidence and make determinations regarding the witnesses' credibility. *Id*. at 642-643 (quotation marks and citation omitted); see also *id*. at 637 ("It is the province of the jury to determine questions of fact and assess the credibility of witnesses. As the trier of fact, the jury is the final judge of credibility.") (quotation marks and citation omitted). The trial court did not abuse its discretion by refraining from disturbing the jury's verdict. *Id*. at 646-647 ("The question being one of credibility posed by diametrically opposed versions of the events in question, the trial court was obligated, despite any misgivings or inclinations to disagree, to leave the test of credibility where statute, case law, common law, and the constitution repose it in the trier of fact.") (quotation marks omitted).

## X. CONCLUSION

Defendant has not demonstrated that his due-process rights were violated based on prearrest delay, nor has he shown that his right to a speedy trial was violated. The trial court did not abuse its discretion by denying defendant's motion to quash the bindover. Defendant has also failed to establish the existence of any reversible error based on alleged prosecutorial misconduct or evidentiary rulings by the trial court. Finally, defendant has not shown that the trial court erred by denying his motions for a directed verdict or a new trial. Defendant's convictions are affirmed.

Affirmed.

/s/ Stephen L. Borrello
/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens

-19-